## Butterman *v.* McClintic-Marshall Construction Company.

*Negligence—Master and servant—Safe place—Proximate cause.*

A construction company, engaged in building a plant for a steel company, used jointly with the latter a siding with a down grade, and erected alongside of it a pole to aid in the unloading of cars. The pole was secured by guy ropes to the tracks in such a way that a car passing over the tracks would strike the ropes. The employees of the steel company permitted cars to get beyond their control on the down grade and run into the cars of the construction company, causing them to strike and break the rope, and let down the pole which struck one of the construction company's workmen and killed him. In an action by the widow of the deceased against the construction company to recover damages for his death, *held*, (1) that as an accident was inevitable if the rope should be struck by a moving car, it was the construction company's duty to foresee that cars might get beyond control and to provide for such a contingency; (2) that the defendant had not provided safe machinery or a safe place to work for its employees; (3) that a verdict and judgment for the plaintiff should be sustained.

*Negligence—Master and servant—Fellow servant—Vice principal.*

Where a construction company employs a person to superintend the erection of a plant, and no official of the company takes any part in the work, and the superintendent hires and discharges men and directs how and where they shall work, the superintendent is a vice principal, and if he is negligent in not providing suitable machinery and a suitable place to work, his employer will be liable to workmen for any resulting accident.

*Negligence—Contributory negligence—Question for jury.*

Where in an action to recover damages for the death of a person killed by a collision of cars, the question of the deceased's contributory negligence depends upon his position at the time of the collision, and the evidence as to where he was, is conflicting, the case must be submitted to the jury.

Argued Feb. 3, 1903.    Appeal, No. 344, Jan. T., 1902, by defendant, from judgment of C. P. Montgomery Co., Dec. T., 1901, No. 1, on verdict for plaintiff, in case of Margarette Butterman v. McClintic-Marshall Construction Company. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Trespass to recover damages for death of plaintiff's husband.

Verdict for plaintiff for $3,500 subject to the question of law reserved.

On motion for judgment, WEAND, J., filed the following opinion :

Plaintiff sues for the recovery of damages resulting from the negligence of defendants which caused the death of her husband.   The jury rendered a verdict for plaintiff.

The court reserved the question of law, whether there was any evidence to be submitted to the jury upon which the plaintiff was entitled to recover, and defendant has moved for judgment non obstante on the point reserved.

John Butterman, plaintiff's husband, went into the employ of the defendant company on the morning of October 31, 1900, and shortly after dinner was killed by being struck by a falling gin pole.   Previous to that time Butterman had been a confectioner.   He only accepted employment with defendants during a strike ; had no previous knowledge of the work required of him, and there was no evidence that he had been instructed, or was aware of the danger connected with the erection of the gin pole.

The defendant company were engaged in the construction of the steels work at the new plant of the Dunmore Iron and Steel Company, at Dunmore, Pa., and on October 31, their employees were engaged in unloading columns, spans and girders from cars on a siding running from the Erie and Wyoming Valley Railroad into the Dunmore Iron and Steel Company's land.

To facilitate the unloading a pole was erected on the side of the siding and was supported by four guy ropes, two of which were fastened to the tracks of the siding in such manner that when in place a car could not pass without striking the rope. In order to let a car pass it was necessary to loosen the rope and pull it away from the track.

A crab or windlass was erected about fifty feet from the track and by this articles to be unloaded from a car were hoisted and lowered.   Butterman's work was principally at the crab. The defendant company had arranged with the Iron and Steel Company to give notice when cars were to be moved on the siding so that the ropes could be in position to allow cars to pass in or out.   On the day of the accident two cars were being unloaded at the gin pole by the defendant company, and beyond these, about thirty or thirty-five feet distant, were two

cars of the Iron and Steel Company being unloaded by the employees of said company.   It became necessary to move these last mentioned cars a short distance, and they were placed in motion.   Although efforts were made to stop them they got beyond control, and there being a descent in the tracks they ran into the cars at the gin pole, broke the rope, thus letting down the pole which struck Butterman, killing him instantly.

The court submitted the question of the defendant's negligence in not providing for such contingency, and of Butterman's contributory negligence, to the jury.   Defendant's contention is, that the court should have given binding instructions for defendants, for three reasons, viz :

1. The proximate cause of the accident was the negligence or act of the Dunmore Iron and Steel Company gang over whom defendants had no control or power.

Admittedly the fastening of the guy rope to the track made it dangerous, for an accident was inevitable if the rope should be struck by a moving car.   Hence, defendants' duty to provide against just such a contingency as happened.   That this event should have been foreseen and provided against admits of no serious dispute, especially when the way in which the siding was constructed is understood.

It is agreed that if not struck, the rope would not break, and hence, what caused the accident was the striking of the other cars.   The absence of a guard rail alone may not be the cause of an accident, but when a horse becomes frightened and falls down an embankment because of the absence of the guard rail, what is the proximate cause ?   The whistle which frightened the horse or the absence of the guard rail ?   And why in such cases is the township liable ?   Because it should have foreseen that horses will become frightened.   So in this case, defendants must have foreseen by common experience that cars may get beyond control, or be set in motion by others.   Sometimes by their own weight when on a descending grade, or by boys, or as in this case, when not properly managed.   " The rule on this subject may be stated to be, that the defendant is not liable in negligence where no injurious consequence could reasonably have been contemplated as a result of the act or omission complained of, but it is liable where injuries might have been anticipated or foreseen : " 21 Am. & Eng. Ency. of Law (2d ed.),

486. The defendants knew that precautions were necessary where cars were to be moved over the siding by providing for notice where such moving was intentional, but made no provision for an involuntary movement of cars or for a movement of cars by any other than the engineer and fireman of a locomotive. They made no provision for accidents, and this was part of their duty. This is a case where the master did not provide suitable safe machinery or a suitable safe place for his employees ; and the fact that this dangerous method was the ordinary method does not excuse, but rather increases the duty to foresee and provide against accidents such as the one that occurred. " The result must occur in the natural and probable course of events : " Pittsburg Southern Railway Company v. Taylor, 104 Pa. 306 ; Vallo v. United States Express Company, 147 Pa. 404.

The true rule is that injury must be the natural and probable consequence of the negligence ; such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to follow : Pittsburg Southern Railway Company v. Taylor, supra.

2. That defendants' foreman was a mere fellow-workman and in no legal sense a vice principal, and being a competent foreman defendants discharged their full legal duty, etc.

Defendants were contractors for the erection of a steel plant at Dunmore, Lackawanna county. Their shops were at Pottstown, Montgomery county, from which place the material was shipped to Dunmore. Frank Straight was employed to superintend the erection of the plant, and no member of defendants' company took any part in the work. Straight says : " I was sent up there as foreman of the construction of the steel work at the Dunmore Iron and Steel Company's plant." James Kearny says : " Straight hired and discharged the men. The work was erected under the supervision of Mr. Straight."

A vice principal for whose negligence an employer will be liable to other employees must be either, first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not merely authority to superintend certain work, or certain workmen, but control of the business and exercising no discretion or oversight of his own, or, secondly, one to whom he delegates a duty of his own,

which is a direct personal and absolute obligation from which nothing but performance can relieve him: Hughes v. Leonard, 199 Pa. 123.

In this case we have the absolute duty resting upon defendants to provide suitable machinery and a suitable place to work: Ross v. Walker, 139 Pa. 42. They delegated this duty to Straight, who had sole control; he adopted the general method of erecting the pole; he had entire charge of the business; he was the company. He adopted the only means available, which the company knew was dangerous and which they knew he would adopt, for their own testimony shows it was the ordinary method. Straight therefore represented his principals in the discharge of an absolute duty, and became vice principal: 12 Am. & Eng. Ency. of Law (2d ed.), 946; Lewis v. Seifert, 116 Pa. 628; Provost v. Ice Co., 185 Pa. 617.

3. Butterman's contributory negligence. Defendants' contention is that Butterman being at a place of safety voluntarily placed himself in a place of danger.

The evidence as to Butterman's position when the collision became inevitable was conflicting, and therefore had to be submitted to the jury.

James Kearny said: " Before I saw Butterman struck and before the car began to move I do not remember of seeing Mr. Butterman;" and: " When Mr. Butterman was struck he was not at the crab. He was within twenty-eight feet of the bottom or base of the gin pole." Michael O'Horo said: " Mr. Butterman was alongside of me at the time, and he wanted to get a block to put ahead of the cars, and he just ran in to get the block under the car as it caught the guy rope. The car did not go six inches after he put in the block," etc.

" Q. And Mr. Butterman left the crab and ran down to put a block under your cars to keep them from going against the guy rope, didn't he? A. No, sir. Mr. Butterman was standing right alongside of one. He did not run from the crab at all. He was down there, because after we would get one column off the men that used to be working at the crab would come down and help to get it out. He was just coming back when the cars struck."

It is also evident that the deceased could not have run twenty-five feet before the moving cars on a steep downward

grade struck the other cars which could only have been twelve or eighteen feet from the moving cars when they started. We left this part of the case to the jury under instructions which are not complained of.

We see no reason to disturb this verdict.

*Error assigned* was in entering judgment on the verdict.

*N. H. Larzelere*, with him *Gilbert Rodman Fox* and *M. M. Gibson*, for appellant.

*Montgomery Evans*, with him *Jacob V. Gotwalts*, for appellee.

PER CURIAM, May 11, 1903 :

The judgment is affirmed on the opinion of the learned judge below.